RICHARD WILLIAM SWEENEY *v.* STATE OF MARYLAND

[No. 310, September Term, 1968.]

*Decided March 26, 1969.*

*Robert C. Heeney* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *Andrew L. Sonner, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This case presents the question we had before us in *Young v. State,* 5 Md. App. 383: whether intercourse between the judge and the jury during the involuntary absence of the appellant constituted reversible error. We stated the applicable rule in *Young* at 390-391:

"(1) it is reversible error for the court to charge or instruct the jury trying the case, on the facts, the law

or the form of the verdict at any time during the involuntary absence of the defendant, even though the charge or instruction is a repetition of a charge or instruction previously given in whole or in part, prejudice being conclusively presumed; and

(2) it is reversible error for the court to communicate in any other manner with the jury trying the case, during the involuntary absence of the defendant unless the record affirmatively shows that such communication was not prejudicial or had no tendency to influence the verdict of the jury."

The basis of the rule, discussed in *Young* at 388-389, is that the accused has the personal and absolute right to be present at every stage of his trial; the giving of instructions to the jury is a stage of the trial, *Young* at 387.

In the instant case the appellant was tried before a jury in the Circuit Court for Montgomery County charged with sodomy and assault and battery of a boy thirteen years of age. The case went to the jury under pleas of not guilty and that he was insane at the time of the commission of the alleged crimes. See Md. Code, Art. 59 § 9(b).[1] After the close of all the evidence, the instructions by the court to the jury and argument of counsel, the jury withdrew for its deliberations. The transcript of the proceedings then reads:

"THE COURT: I got this note from the jury. I got a note from the jury; they asked me the question, it is right here, and they said, after the jury is instructed, can the jury ask a judge a question?

I answered the note in writing, 'Yes.'

I sent it back to them and then this note was returned and here is the question: 'Would a verdict of

1. The crimes were alleged to have been committed on 8 March 1967. The trial commenced 27 May 1968. Chapter 709, Acts 1967, repealed former §§ 7-12 of Art. 59 and enacted new §§ 7-12 in lieu thereof. By § 2 of Chapter 709 its provisions were made applicable to all cases tried on and after 1 June 1967. Thus the new law is applicable to this case.

not guilty by reason of insanity place the Defendant in a hospital for treatment?'

That was not on here when it was returned.

It says, 'Can a recommendation be made when a verdict is returned by the jury?'

And I answered to them, 'Not in this case.'

And then they sent back with this question: 'Will a verdict of not guilty by reason of insanity place the Defendant in a hospital for treatment?'

I could put down here, it is in the discretion of the Court.

Now, what do you say to it?"

The last question of the court was addressed to the Deputy State's Attorney and defense counsel. There followed extensive argument by counsel, after which the jury came back into the courtroom and the court further instructed them. In answer to the jury's question, "Will a verdict of not guilty by reason of insanity place the defendant in a hospital for treatment," the court said that it is in the discretion of the court, "subject to certain other contingencies." It read the jury Art. 59, § 11 and explained it. The jury then withdrew for its further deliberations. The verdicts of the jury were "Sane at the time of the commission of the alleged crime" and "guilty on the first count of the Indictment (sodomy)." See Md. Code, Art. 59, § 9(b). A sentence of 10 years was imposed. As we construe the remarks of the judge contained in the transcript of the proceedings, the jury first sent the judge a note inquiring if they could ask a question and he replied in writing that they could. They then sent him a note asking whether they could make a recommendation when they returned a verdict and the judge replied, "Not in this case." The jury then sent the note asking whether the verdict of not guilty by reason of insanity placed the defendant in a hospital for treatment. It was at that time that counsel were consulted and the jury brought back and instructed in answer to that last question. The transcript does not disclose whether or not the appellant was present during any stage of any of this intercourse between the judge and the jury, including the time when the jury was given the additional in-

structions in the courtroom. It shows that counsel were present after the receipt by the judge of the last note and during the additional instructions but not whether they were present at the time of the receipt of the first two notes and the replies by the court. However, there is in the record before us an affidavit of the Deputy State's Attorney that he was not present at the time of the receipt and answer of the first two notes from the jury and an affidavit from defense counsel that he was not present at the time of the receipt and answer of the first two notes nor was the appellant then present. We cannot ascertain if the appellant was present during the consideration and argument as to the third note. But defense counsel stated during oral argument before us that the appellant was present when the additional instructions in answer to the third note were given to the jury in open court.

As both the appellant and his counsel were present when the additional instructions were given to the jury in response to the third question, we are concerned only with the intercourse between the judge and the jury with respect to the first two questions.[2]

We think it clear that the first question and answer were a mere "communication" and that they were not prejudicial to the appellant and had no tendency to influence the verdict of the jury. These communications do not require reversal even though the appellant was not present nor did the absence of his counsel deny him effective representation.

The second question, received and answered by the judge in the involuntary absence of both the appellant and his counsel was, "Can a recommendation be made when a verdict is returned by the jury?" The court replied, "Not in this case." Of course, we cannot speculate as to what recommendation the jury

---

2. The trial of a criminal case is temporarily suspended in order that the judge may investigate legal questions presented by instructions requested. The trial is resumed when the trial judge has reached his conclusions and is about to communicate his instructions to the jury. The interval has been devoted not to trial but to preparing for trial. Oral argument as to the instructions under contemplation is not part of the trial and the defendant need not be then present. See *Young v. State, supra,* note 6 at p. 387.

had in mind. It may be, in light of the nature of the question which followed, that they were considering recommending that the appellant be placed in a hospital for treatment if they found he was insane at the time of the commission of the offense. Or it may be that they were considering a recommendation of mercy. Nor can we speculate why the judge replied that no recommendation could be made "in this case." It may be that he thought the jury had in mind the power of a jury to add to their verdict of guilty of certain offenses the words "without capital punishment" [3] which power is not prescribed with respect to the crimes for which the appellant was being tried.[4] In any event the reply of the judge did not correctly state the law. Md. Rule 758e provides: "A jury may attach to its verdict a recommendation to the court to show mercy to an accused. Such recommendation shall not be binding upon the court." We think the incorrect statement of the law to the jury constituted reversible error on several grounds.

First, we think that the answer as given was an instruction as to the law within the purview of Rule 758e and as to the form of the verdict. As such, when it was communicated to the jury, it was a stage of the trial and the appellant had the absolute right to be present. *LaGuardia v. State,* 190 Md. 450 is readily distinguishable. At the time of that decision there was no express authority in Maryland for the jury to recommend mercy in any criminal case. The holding that a recommendation of mercy had no direct relation to the verdict was predicated on this lack of express authority. "[I]n the absence of statute, the jury have no express authority to add a recommendation of mercy to a verdict of guilty." It was for this reason the Court said that "* * * a recommendation of mercy is mere surplusage and does not affect the verdict * * *." 190 Md. at 460. At the time of the trial in the instant case, as we have stated, there was express authority for the jury to attach to its verdict a recommendation to the court to show mercy. A communication by the judge to the jury pertaining thereto was thus both as to

**3.** See Md. Code, Art. 27, §§ 12, 413 and 463.
**4.** See Md. Code, Art. 27, § 553 prescribing the penalty for sodomy. No statutory penalty is prescribed for assault and battery. *Weddle v. State,* 4 Md. App. 85, 90.

the law of this State [5] and as to the form of the verdict. It was clearly an instruction and the involuntary absence of the appellant when it was given was prejudicial error.

Second, even if the answer was not an instruction but a mere "communication" as we construed such term in *Young v. State, supra,* we cannot say that the record affirmatively showed that it was not prejudicial or had no tendency to influence the verdict of the jury. On the contrary it may well have had a tendency, especially as expressed, to imply to the jury that the judge felt "in this case" no recommendation was warranted because the appellant was not only guilty of the crimes charged but his acts were such as not to justify the mercy of the court. Thus when given in the involuntary absence of the appellant it was reversible error. And viewed in this light the communication may well have been an unauthorized interference with the deliberations of the jury, tending to overcome reasonable doubts and coerce a verdict and would be prejudicial error whether or not the appellant were present. *Young v. State, supra,* at 391.

Third, in view of the substance of the answer, we think that the absence of counsel when it was communicated to the jury denied the appellant effective assistance of counsel. Defense counsel had no opportunity to object to the incorrect statement of the law or to argue that it should not be given to the jury as worded or to request that the judge clarify his statement. We feel that the appellant was entitled to the assistance of counsel with respect thereto and such assistance was denied him.

We hold that the intercourse between the judge and the jury, as to the second question posed by the jury, during the involuntary absence of the appellant and his counsel, constituted reversible error.

In view of our holding we shall consider only one of the other questions presented by the appellant. He asks: "Where the State consented to appellant's motion for a bi-furcated trial on the separate issues of insanity and guilt of the crime, was it error on the part of the trial court to deny the motion?"

Whether or not the State consented to the motion was not

---

5. The Maryland Rules of Procedure have the force of law. *Hauver v. Dorsey,* 228 Md. 499.

material. The question is whether the appellant was entitled to have such a bi-furcated trial as a matter of right, or in the discretion of the trial court. If the matter was one for the discretion of the trial court, further inquiry would be required to determine whether the exercise of that discretion in denying the motion was abused.

There are many issues raised as to rights and privileges of an accused, constitutional and otherwise, relating to a criminal trial resulting in a verdict of not guilty or barring prosecution of the crime charged, which do not go directly to the guilt of the accused, as, for example, the admissibility of evidence, that the accused was being subjected to being placed twice in jeopardy or was denied a speedy trial. While such matters are relevant to his trial and are encompassed within the constitutional guarantees of a "public trial," they are distinguishable from defenses available to an accused which go to his guilt *per se,* as for example, the absence of criminal intent or that a homicide was committed in self defense, or when the alleged victim of a rape, of the age capable of consent, consented to the act of sexual intercourse, or when an an accused was so intoxicated as to deprive him of his capacity to form a required specific intent. In this State it is established that such defenses as these are not determinable apart from the trial of the merits of guilt or innocence and are matters for a finding by the trier of facts, be it court or jury, on the trial of the merits. We find no violation of due process of law by this procedure for we see no prejudice to the accused by his raising such alternative defenses, i.e. the evidence was not sufficient to establish beyond a reasonable doubt that he committed the crime of which he was charged but even if it be assumed that he did commit the crime, he could not be found guilty by reason of the relevant alternative defense raised. We do not construe due process of law to mean that an accused is entitled to two separate trials on the merits of his guilt or innocence in these circumstances. Insanity at the time of the commission of the offense is such an alternative defense and is for the determination of the trier of fact at the trial on the merits, for if the accused was insane at the time of the commission of the crime he was not responsible for his criminal conduct and must be found not guilty. Such affirmative de-

fense puts in issue one of the essential elements of guilt—the defendant's mental capacity.[6]

The instant case was tried before a jury and the appellant points out in his brief that the Court of Appeals in *Tull v. State,* 230 Md. 596, 601, considering Md. Code, Art. 59, § 7 as was then in effect, in conjunction with Md. Rule 720, allowing a plea of not guilty by reason of insanity, arrived at the conclusion that there was "no requirement that the issue of insanity should be tried separately." We find no requirement in Art. 59, § 9, now in effect, compelling such requirement and on the contrary think it clear that the legislative intent was to the contrary. The statute, § 9(b), provides for the filing of a plea "that the defendant was insane at the time of the commission of the alleged crime" in addition to the plea or pleas otherwise required or permitted by law. Md. Rule 720 permits a general plea of not guilty.[7] When the plea as to insanity is filed "the court shall direct *the* jury to render a special verdict on the sanity of the defendant at the time of the alleged crime." (emphasis added). There is no expressed provision that the jury rendering the special verdict on the sanity of the accused is a jury separate from the one rendering the verdict as to guilt or innocence and we see no such requirement or authority implied.

We hold that the appellant was not entitled to a bifurcated trial on the separate issues of insanity and guilt of the crime nor

---

6. See *Weihofen, Mental Disease as a Criminal Defense* (1954) pp. 357-361. We note, however, that Professor Weihofen cites *Price v. State,* 159 Md. 491, as authority for his statement that "Maryland at one time required the insanity issue to be tried separately." We do not find that *Price* so holds. It found there should be separate verdicts as to insanity and guilt. But see *Berman v. Warden,* 232 Md. 642. Compare *Holmes v. United States,* 124 U. S. App. D. C. 152, 363 F. 2d 281 (1966); *Contee v. United States,* U. S. App. D. C., 410 F. 2d 249 (1969).

7. Md. Rule 720 also permits the plea of "not guilty by reason of insanity as provided by statute." The subsequent adoption of Art. 59, § 9(b) designates the plea as to insanity to be as above stated. Thus there is no longer a plea of "not guilty by reason of insanity."

440

was such within the exercise of the court's discretion. The court did not err in denying the motion.

*Judgment reversed and case remanded for a new trial. Costs to be paid by the County Council of Montgomery County.*